# United States Court of Appeals for the Federal Circuit

---

**DANIEL CHASE HARRIS,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2017-1912

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00560-EGB, Senior Judge Eric G. Bruggink.

---

Decided: August 29, 2017

---

DANIEL CHASE HARRIS, Terre Haute, IN, pro se.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

---

Before PROST, *Chief Judge,* BRYSON, and STOLL, *Circuit Judges.*

PER CURIAM.

Lieutenant Daniel Harris appeals the decision of the United States Court of Federal Claims, dismissing his claim to recover back pay from the United States Navy for failure to state a claim under the Military Pay Act, 37 U.S.C. § 204 (2012). *See Harris v. United States*, No. 16-560C, 2017 WL 532347 (Fed. Cl. Feb. 9, 2017). Lt. Harris also appeals the trial court's dismissal of his due process claim for failure to state a claim and the trial court's dismissal for lack of jurisdiction of his challenge to a civilian court's jurisdiction to convict him as a military service member. *Id.* at *3–6. We affirm.

## BACKGROUND

Lt. Harris has been an officer in the Navy since 2005. He was arrested by civilian authorities on November 12, 2013, for sexual offenses involving minors. Lt. Harris was held in confinement by civilian authorities until his conviction and sentencing on July 13, 2015. Lt. Harris was convicted on thirty-one criminal counts by a jury in the United States District Court for the Eastern District of Virginia and sentenced to fifty years imprisonment.

During the period between his arrest and conviction, the Navy withheld Lt. Harris's pay pending the outcome of his criminal proceedings. Based on his conviction, the Navy determined that, under the Military Pay Act and the applicable Department of Defense ("DoD") regulations, Lt. Harris's absence was unexcused and therefore he was not entitled to any pay for his absence during confinement.

Lt. Harris filed a complaint in the trial court, seeking to recover back pay from the time he was arrested until the date of his conviction. Lt. Harris argued that the Navy's withholding of his pay prior to trial and conviction violated the Military Pay Act, as well as his constitutional

due process rights.  Lt. Harris also challenged the civilian court's jurisdiction to charge and convict him given his position as a military service member.

On the Government's motions, the trial court stayed fact discovery and later dismissed Lt. Harris's complaint for failure to state a claim and for lack of jurisdiction. Specifically, the trial court concluded that fact discovery was unnecessary to determine whether he had stated a claim under the Military Pay Act or for due process violations.  The trial court ultimately held that Lt. Harris failed to state a claim under the Military Pay Act because he was convicted of his crimes, and therefore, under the relevant DoD regulations, he was not entitled to pay during his unexcused absence.  The trial court also concluded that Lt. Harris failed to state a due process claim because he was not statutorily eligible to receive pay during his detention and, as such, the Fifth and Fourteenth Amendments were not implicated.  Finally, the trial court dismissed for lack of jurisdiction Lt. Harris's challenge to the civilian court's jurisdiction to convict him as a military service member.

Lt. Harris appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2012).

## DISCUSSION

### I.

Lt. Harris first challenges the trial court's protective order, which barred discovery pending its disposition of the Government's motion to dismiss.  We review the trial court's denial of a request for discovery for an abuse of discretion.  *See Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1342 (Fed. Cir. 2008).

Prior to the Government's response to Lt. Harris's complaint, Lt. Harris served multiple requests for admission on the Government.  Lt. Harris argued that his pay was suspended "for unknown reasons by an unknown

authority" after his commanding officer told him that he would be placed on "unavailable but unavoidable" status, which would have entitled him to pay. Appellant Br. 5–6. Lt. Harris sought to substantiate his claim that his commanding officer excused his absence and thus requested official Navy documents to support his claim that his pay was wrongfully withheld.

The Government responded by seeking a protective order, barring Lt. Harris from pursuing discovery until the trial court decided the Government's dispositive motion. The trial court agreed, finding that Lt. Harris's discovery requests were premature at the time they were made and that the Government's motion raised purely legal questions that could be resolved without fact discovery. Accordingly, the trial court stayed discovery pending its resolution of the Government's motion to dismiss, which it ultimately granted. Lt. Harris argues this was error and that he was entitled to discovery.

Even assuming the truth of Lt. Harris's factual allegations, the trial court did not abuse its discretion in entering the protective order barring fact discovery in this case. As the trial court correctly held, the Government moved to dismiss Lt. Harris's complaint for failure to state a claim under the Military Pay Act, for failure to state a due process claim, and for lack of subject matter jurisdiction. We agree with the trial court that the issues in this case—including the sufficiency of Lt. Harris's complaint under Court of Federal Claims Rule 12(b)(6) and whether his complaint sufficiently alleged jurisdiction under Court of Federal Claims Rule 12(b)(1)—implicate legal questions for which no fact discovery was required.

That Lt. Harris raised a factual dispute regarding whether he was told that he would receive an unavailable but unavoidable status by his commanding officer is relevant to none of these issues. As we explain more fully below, whether Lt. Harris's absence was excused as

unavoidable (therefore entitling him to back pay) is determined by statute and DoD regulations based on whether he was ultimately convicted or acquitted, and there was no factual dispute that Lt. Harris was convicted. Thus, we agree with the trial court that no fact discovery was necessary to resolve the Government's motion.

## II.

Lt. Harris next argues that the trial court misinterpreted the Military Pay Act and implementing regulations and thus erred in dismissing his back-pay claim for failure to state a claim.

We review the trial court's dismissal of Lt. Harris's complaint for failure to state a claim de novo. *See Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1328 (Fed. Cir. 2012). To survive a Rule 12(b)(6) motion, his "complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Kam-Almaz v. United States*, 682 F.3d 1364, 1367 (Fed. Cir. 2012) (quoting *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009)). In reviewing the sufficiency of a complaint under Rule 12(b)(6), we must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Lt. Harris's favor. *See Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017). "However, we interpret statutes, contracts, and regulations de novo." *Id.*

The Military Pay Act provides that a member of the military who is on active duty is "entitled to the basic pay of the pay grade to which [he is] assigned." 37 U.S.C. § 204(a) (2013). If, however, a service member is deemed absent without leave, he "forfeits all pay and allowances for the period of that absence, unless it is *excused as unavoidable*." 37 U.S.C. § 503(a) (emphasis added).

The DoD regulations implementing the Military Pay Act further provide criteria for determining whether a service member's absence is excused as unavoidable. Specifically, DoD Financial Management Regulation 7000.14-R, Tables 1-12 and 1-13, provide rules for determining whether a service member's absence is excused or not excused as unavoidable when the service member is confined by civilian authorities. *See* DoD FMR 7000.14-R, Vol. 7A, Chapter 1, Tables 1-12, 1-13. Table 1-13 provides that when a service member is absent from duty in confinement by civilian authorities and where the service member is tried and convicted, his absence is not excused as unavoidable. When the service member's absence is not excused as unavoidable under Rule 6 of Table 1-13, Rule 6 of Table 1-12 provides that the service member is not entitled to pay.

Lt. Harris argues that he is entitled to pay for the period between his arrest and his conviction. Specifically, he contends that the DoD regulations are ambiguous as to whether a military member is eligible for pay during this time period. According to Lt. Harris, the regulations merely provide that a service member is not entitled to pay after conviction without addressing entitlement to pay during pre-conviction confinement. We disagree.

As the trial court correctly concluded, nearly all the rules in Table 1-13 base the determination of whether an absence is "excused as unavoidable" on the ultimate disposition of the service member's case. For example, Rule 1 provides that if a service member is tried and acquitted, his absence is excused as unavoidable. Under Rule 2, if the service member's charges are dismissed and it is clear that his arrest was not due to misconduct, his absence is excused as unavoidable. Relevant here, Rule 6 provides that if a service member is "tried and convicted," his absence is not excused as unavoidable, and thus under Table 1-12, he is not entitled to pay. *See* DoD FMR 7000.14-R, Vol. 7A, Chapter 1, Tables 1-12, 1-13. As

the trial court found, none of the rules distinguish between pre- and post-conviction confinement, suggesting that they apply to the military member's entire absence due to confinement (i.e., both before and after conviction, acquittal, or dismissal).

Our court has previously addressed a question similar to the one raised by Lt. Harris on appeal. In *Matthews v. United States*, 750 F.3d 1320 (Fed. Cir. 2014), we held that a naval officer who was tried and convicted by civilian authorities was not entitled to back pay. Matthews argued that the military owed him back pay from the date of his arrest when his pay was terminated. *Matthews*, 750 F.3d at 1321–22. The trial court held that 37 U.S.C. § 503 prohibits a service member from receiving back pay due to his civilian incarceration when he was ultimately convicted. *Id.* at 1323. Relying on the same DoD regulations raised here, we affirmed, holding that "the civilian confinement of a service member who has been tried and convicted is not deemed 'unavoidable,'" and thus "Mr. Matthews, who [was] in federal incarceration after being tried and convicted, [was] absent from duty without leave, and his absence c[ould] not be excused as unavoidable." *Id.* at 1323.

Similarly, we agree with the Claims Court that in this case, a plain reading of the DoD regulations supports the Government's position that Lt. Harris is not entitled to pay for his pre-trial confinement because he was ultimately convicted. Rule 6 of Table 1-13 specifically provides that where, as here, a military member is tried and convicted, his absence is not excused as unavoidable, and thus he is not entitled to pay. While we agree that the rules in Table 1-13 do not specifically mention "pre-trial confinement," the rules address absence due to confinement and, in doing so, they do not divide that confinement period into pre-conviction and post-conviction time periods, strongly suggesting that the entire period of absence due to confinement should be treated the same. In other

words, it is clear from a plain reading of the statute and regulations that a service member's absence while in confinement, including pre-trial confinement, is determined based on the outcome of his case.

Our conclusion is supported by the other rules in Table 1-13. For example, Rule 1, in which a service member's absence while in confinement is excused if he is tried and acquitted, does not mean that only his absence post-acquittal is excused because presumably he would return to service following acquittal. The more logical reading is that his absence from arrest until acquittal is excused as unavoidable, thereby entitling him to pay for the entire period of confinement. Rule 6 applies in an analogous fashion. Because Lt. Harris was convicted, his absence due to pre-trial confinement (like his absence due to post-trial confinement) was not excusable as unavoidable.

Accordingly, we agree with the trial court that based on the facts alleged, Lt. Harris cannot state a claim of entitlement to back pay under the Military Pay Act.

## III.

We also agree with the trial court's determination that, because Lt. Harris's right to back pay is statutorily based, he cannot state a claim for due process violations under the Fifth and Fourteenth Amendments.[1] It is well-

---

[1] The Court of Federal Claims generally lacks jurisdiction to adjudicate due process claims absent a separate money-mandating source of substantive law. *See, e.g.*, *In re United States*, 463 F.3d 1328, 1335 n.5 (Fed. Cir. 2006) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."). Lt. Harris, however, has identified the Military Pay Act as a money-mandating source of substantive law. *See Holley v. United States*,

settled that "the rights and benefits of a member of the military services, including pay and allowances, are defined by statute." *Dock v. United States*, 46 F.3d 1083, 1086 (Fed. Cir. 1995). Indeed, as we explained above, Lt. Harris is ineligible for pay based on the express provisions in the Military Pay Act and regulations implementing the statute. That Lt. Harris was not provided a hearing before the Navy withheld his pay also does not raise due process concerns. Under the applicable regulations, his entitlement to pay while confined could not have been determined until the outcome of his criminal case, which resulted in a trial and conviction and therefore no entitlement to pay. Lt. Harris points to no statutory provision or regulation affording him a hearing prior to the Navy ceasing his pay pending the outcome of his criminal proceeding by civilian authorities. Therefore, we agree with the trial court that Lt. Harris failed to state a due process claim.

Moreover, to the extent Lt. Harris continues to challenge the jurisdiction of civilian authorities to prosecute and convict him as a military service member, we agree with the trial court that it lacks jurisdiction to review convictions in criminal cases, *see Sanders v. United States*, 252 F.3d 1329, 1333 (Fed. Cir. 2001), and also lacks jurisdiction "to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts." *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994).

---

124 F.3d 1462, 1466 (Fed. Cir. 1997) ("It is no longer subject to debate whether a Tucker Act claim may be stated for military back pay and ancillary relief."). Therefore, Lt. Harris has satisfied his burden of proving jurisdiction pursuant to the Tucker Act. *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).

CONCLUSION

We have reviewed Lt. Harris's additional arguments and find them unpersuasive. For the foregoing reasons, we affirm the trial court's dismissal of Lt. Harris's complaint for failure to state a claim and for lack of jurisdiction.

**AFFIRMED**

COSTS

No costs.