# United States Court of Appeals for the Federal Circuit

---

**JOSEPH ABRANTES, NEFTALI ACEVEDO, HECTOR ACOSTA, JOSE ACOSTA, DAVID ADAMS, SEAN ADARME, JOSE AGUILAR, DANIEL ALBA, MICHELLE ALBERTSON, KENIE ACEVEDO-CORREA, AND ALL PLAINTIFFS REPRESENTED BY ALAN LESCHT AND ASSOCIATES, PC WITH JACK JARRETT AS LEAD COUNSEL,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2021-2021

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00129-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: November 30, 2022

---

LEON DAYAN, Bredhoff & Kaiser, PLLC, Washington, DC, argued for plaintiffs-appellees. Also represented by GARY E. MASON, DANIELLE LYNN PERRY, Mason LLP, Washington, DC; CONOR DANIEL AHERN, Alan Lescht and Associates, PC, Washington, DC.

MARK B. STERN, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BRIAN M. BOYNTON, SEAN JANDA, MICHAEL SHIH.

_____

Before REYNA, LINN, and HUGHES, *Circuit Judges*.

Opinion for the court filed by Circuit Judge HUGHES.

Dissenting opinion filed by Circuit Judge REYNA.

HUGHES, *Circuit Judge*.

The government appeals a decision of the United States Court of Federal Claims denying the government's motion to dismiss for failure to state a claim. The government delayed payment to border patrol agents until the end of a partial government shutdown, as dictated by the Anti-Deficiency Act. The Court of Federal Claims ruled that the delay established a prima facie violation of the Border Patrol Agent Pay Reform Act and an unjustified or unwarranted personnel action entitling employees to interest and attorney fees under the Back Pay Act. Because we hold that the Border Patrol Agent Pay Reform Act and Back Pay Act do not require the government to make payments during a lapse in appropriations, we reverse.

I

The facts and procedural history of this case mirror those laid out in our opinion issued today in *Avalos v. United States*, No. 21-2008 (Fed. Cir. Nov. 30, 2022). In *Avalos*, federal employees who worked during the 2018–2019 partial government shutdown alleged that the government violated the Fair Labor Standards Act (FLSA) by delaying payments until after the shutdown ended. This case concerns border patrol agents who also worked during the shutdown but are exempt from the FLSA under 29 U.S.C. § 213(a)(18).

From December 22, 2018, to January 25, 2019, the federal government partially shut down due to a lapse in appropriations. Plaintiffs-Appellees, border patrol agents working for U.S. Customs and Border Protection, were "excepted employees" required to keep working during the shutdown. 31 U.S.C. §§ 1341(c)(2), 1342. The government did not pay Plaintiffs-Appellees during the shutdown, instead adhering to the Anti-Deficiency Act's prohibition on "authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." *Id.* § 1341(a)(1)(A). The parties do not dispute that the government paid Plaintiffs-Appellees their accrued wages after the partial shutdown ended, and Plaintiffs-Appellees do not allege that the government failed to pay them at the earliest possible date after the shutdown ended, as the Anti-Deficiency Act requires. *See id.* § 1341(c)(2).

Plaintiffs-Appellees sued in the Court of Federal Claims, alleging that the government "violated [the Border Patrol Agent Pay Reform Act (BPAPRA)] by not paying Plaintiffs[-Appellees] their wages on their regularly scheduled payday" for work they performed after the shutdown began. Complaint at ¶ 16, *Abrantes v. United States*, 151 Fed. Cl. 551 (2020) (No. 19-129C), ECF No. 1. Plaintiffs-Appellees further alleged that the late payments were unjustified personnel actions under the Back Pay Act and therefore seek both interest on their back pay and attorney fees. *See id.* at 36–37 ¶¶ 17–18, 44 ¶¶ (f)–(g); Plaintiffs-Appellees' Br. 8.

The government moved to dismiss Plaintiffs-Appellees' complaint for failing to state a claim, under Court of Federal Claims Rule 12(b)(6). The government argued that, when Congress enacted provisions of the Anti-Deficiency Act that "criminalized payments during an appropriations lapse, Congress plainly precluded payments on the schedule plaintiffs assert is required by the BPAPRA and the [Back Pay Act]." Defendant's Motion to Dismiss at 10–11,

*Abrantes*, 151 Fed. Cl. 551 (No. 19-129C), ECF No. 23. "Federal officials who comply with that criminal prohibition do not violate the BPAPRA or the [Back Pay Act]," the government argued, because "Congress did not create a scheme under which compliance with the Anti-Deficiency Act would result in additional compensation as damages to federal employees." *Id.* at 11.

The Court of Federal Claims denied the government's motion to dismiss, reasoning that the government's "obligations under the [Anti-Deficiency Act] do not abrogate its obligations under" the BPAPRA and the Back Pay Act. *Abrantes*, 151 Fed. Cl. at 556–57. Although "[t]he text of the BPAPRA does not specify a date on which wages must be paid," the Court of Federal Claims viewed Plaintiffs-Appellees' claim as having accrued during the shutdown, "at the time the [g]overnment fail[ed] to make the payment alleged to be due." *Id.* at 554–55 (quoting *Burich v. United States*, 366 F.2d 984, 986 (Ct. Cl. 1966)).

The Court of Federal Claims then granted the government's motion to certify an interlocutory appeal of "the legal reasoning underlying the government's position" that it is not "liable for damages under the BPAPRA when it complies with the Anti-Deficiency Act's command to defer payment of federal employees' wages during a lapse in appropriations." Order at 1–2, *Abrantes*, 151 Fed. Cl. 551 (No. 19-129C), ECF No. 69 (cleaned up). The government appeals. We have jurisdiction under 28 U.S.C. § 1292(d).

II

We review the Court of Federal Claims' legal conclusions de novo and its factual findings for clear error. *Adams v. United States*, 350 F.3d 1216, 1221 (Fed. Cir. 2003). Because the Court of Federal Claims certified for interlocutory appeal the "legal reasoning" of the parties' positions on a motion to dismiss, we review the legal question de novo, "accept[ing] all well-pleaded factual allegations as true and draw[ing] all reasonable inferences in [Plaintiffs-

Appellees'] favor." *Harris v. United States*, 868 F.3d 1376, 1379 (Fed. Cir. 2017).

As we detail in *Avalos*, the Anti-Deficiency Act dates back to 1870. The Act has long prohibited "an officer or employee" of the United States government from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1). An officer or employee who violates this provision is subject to "administrative discipline" and, for willful violations, criminal penalties. *Id.* §§ 1349(a), 1350.

The BPAPRA, enacted in 2014, governs compensation for border patrol agents. Border Patrol Agent Pay Reform Act of 2014, Pub. L. No. 113-277, 128 Stat. 2995 (codified primarily at 5 U.S.C. § 5550). Under BPAPRA, each border patrol agent "shall receive pay" that corresponds with the agent's assigned level of pay. 5 U.S.C. § 5550(b)(2)(B), (b)(3)(B); *see also id.* § 5550(b)(4)(A). And each "border patrol agent shall receive compensatory time off or pay at the overtime hourly rate of pay for hours of work in excess of" the regular number of hours set for each level. *Id.* § 5550(b)(2)(D), (b)(3)(D), (b)(4)(B). The BPAPRA does not specify a date on which the government must pay wages.

The BPAPRA includes no provision authorizing monetary relief for violations, so employees seeking such relief must proceed under some other remedial statute. Plaintiffs-Appellees proceed under the Back Pay Act. Passed in 1966, the Back Pay Act provides that an agency employee "affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the [employee's] pay" is "entitled, on correction of the personnel action, to receive" back pay. Back Pay Act of 1966, Pub. L. No. 89-380, 80 Stat. 94 (codified at 5 U.S.C. § 5596(b)). Congress amended the Back Pay Act in 1978 to provide for attorney fees, Civil Service Reform Act of 1978, Pub. L. No. 95-454 § 702, 92 Stat. 1111, 1216 (codified at 5

U.S.C. § 5596(b)(1)(A)(ii)), and again in 1987 to provide for interest computed from "the effective date of the withdrawal or reduction involved." Joint Resolution Making Further Continuing Appropriations for the Fiscal Year 1988, and for Other Purposes, Pub. L. No. 100-202, tit. VI § 623(a), 101 Stat. 1329, 1329-428–29 (1987) (codified at 5 U.S.C. § 5596(b)(2)).

## III

This appeal turns on whether the BPAPRA and the Back Pay Act require payment on an employee's regular pay date during a lapse in appropriations, even though the Anti-Deficiency Act prohibits the government from making such payments until after the lapse ends. Plaintiffs-Appellees argue that delayed payment violates the BPAPRA and is an unwarranted or unjustified personnel action actionable under the Back Pay Act, notwithstanding the Anti-Deficiency Act. The government may thus be liable for interest and attorney fees even after paying the wages due. The government responds that Congress did not intend for the BPAPRA to impose any implicit obligation to pay wages on a particular date that "would penalize compliance with the existing provisions of the Anti-Deficiency Act." Defendant-Appellant's Reply Br. 17.

For reasons similar to those in *Avalos*, we hold that the government does not violate any implicit timely payment obligation in the BPAPRA and Back Pay Act when, as required by the Anti-Deficiency Act, it defers payments to excepted employees until after a lapse in appropriations ends.

## A

Our opinion today in *Avalos* addresses the analogous question of whether the FLSA, which implicitly imposes a timely payment obligation, requires payment during a shutdown and thus imposes liability for liquidated

damages for the government's failure to pay wages until after the shutdown ends.

The FLSA imposes a firmly established, implicit timely payment obligation. *Rogers v. City of Troy,* 148 F.3d 52, 55 (2d Cir. 1998); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (reasoning that the FLSA's liquidated damages provision "constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental . . . that double payment must be made in the event of delay"). Relying in part on the principle that claims for nonpayment of wages accrue on the employee's regular pay date, courts have held that FLSA's implicit timely payment obligation ordinarily requires employers to pay wages by "the employee's regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1541 (9th Cir. 1993).

We hold in *Avalos* that "the FLSA's timely payment obligation considers the circumstances of payment and that, as a matter of law, the government does not violate this obligation when it complies with the Anti-Deficiency Act by withholding payment during a lapse in appropriations." *Avalos*, No. 21-2008, slip op. 15. Under this interpretation, we reason, the FLSA's timely payment obligation neither conflicts with nor implicitly overrules the Anti-Deficiency Act. *Id.*

B

Plaintiffs-Appellees urge that a timely payment obligation is implicit in the BPAPRA and Back Pay Act for the same reasons that one is implicit in the FLSA. We need not decide today whether the BPAPRA and Back Pay Act contain any type of implicit timely payment requirement. It is enough to note that the BPAPRA and Back Pay Act do not impose any more rigid a timely payment than the FLSA.

Plaintiffs-Appellees acknowledge that, like the FLSA, the BPAPRA and Back Pay Act do not explicitly address when payment generally is due or whether payment is due

during a lapse in appropriations. Plaintiffs-Appellees note that both the FLSA and BPAPRA include similar mandatory language: the FLSA states that each employer "shall pay" certain wages, 29 U.S.C. § 206(a), and the BPAPRA mandates that each border patrol agent "shall receive pay" at a certain rate. 5 U.S.C. § 5550(b)(2)(B), (b)(3)(B). But even if the BPAPRA together with the Back Pay Act generally require timely payment on regular pay dates, a lapse in appropriations is a circumstance that justifies later payment. As we found in *Avalos*, this interpretation of the BPAPRA and Back Pay Act avoids conflict with or implicit overruling of the Anti-Deficiency Act.

"[W]here two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984) (internal quotation omitted). Plaintiffs-Appellees propose giving effect to both statutes by holding that delayed payment due to a lapse in appropriations violates the BPAPRA and the Back Pay Act. But this would create an unnecessary conflict with the Anti-Deficiency Act. The BPAPRA and the Back Pay Act would require payment during a lapse in appropriations, while the Anti-Deficiency Act would prohibit it. This is an absurd result that we should avoid, if possible. *See Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940).

Interpreting the Back Pay Act and BPAPRA to abrogate the Anti-Deficiency Act's prohibition on making payments during a lapse in appropriations would be even more untenable. We disfavor repeals by implication, "particularly . . . when, as here, we are urged to find that a specific statute . . . has been superseded by a more general one." *Sw. Marine of S.F., Inc. v. United States*, 896 F.2d 532, 533 (Fed. Cir. 1990). "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should

follow." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (cleaned up). The Anti-Deficiency Act lays out with specificity that the government may not pay workers during a shutdown. The later-enacted BPAPRA, although specific about who must be paid and how much, is more general with respect to when payments must be made. The Back Pay Act is likewise non-specific as to timing. If Congress intended to upend or modify the Anti-Deficiency Act's long-standing prohibition on making expenditures for which Congress has not appropriated funds, it could have done so with a specific and express statement. Plaintiffs-Appellees have not shown that providing a remedy for "unjustified or unwarranted personnel actions" was a clear statement of Congressional intent to overturn the specific prohibitions of the Anti-Deficiency Act.

The government's position gives full effect to the Anti-Deficiency Act, BPAPRA, and Back Pay Act and avoids the implicit repeal of any provision of the Anti-Deficiency Act: A lapse in appropriations justifies the government paying wages after an employee's regularly scheduled pay date. Payment at the earliest possible date after a shutdown is not an "unjustified or unwarranted" personnel action creating liability for interest or attorney fees under the Back Pay Act.

\* \* \*

Because the government, as a matter of law, did not violate the BPAPRA and the Back Pay Act when it paid border patrol agents "at the earliest date possible after the lapse in appropriations end[ed]," 31 U.S.C. § 1341(c)(2), we reverse the Court of Federal Claims' decision denying the government's motion to dismiss for failure to state a claim and remand for entry of judgment consistent with this opinion.

**REVERSED AND REMANDED**

10                                                                    ABRANTES v. US

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

———————

**JOSEPH ABRANTES, NEFTALI ACEVEDO, HECTOR ACOSTA, JOSE ACOSTA, DAVID ADAMS, SEAN ADARME, JOSE AGUILAR, DANIEL ALBA, MICHELLE ALBERTSON, KENIE ACEVEDO-CORREA, AND ALL PLAINTIFFS REPRESENTED BY ALAN LESCHT AND ASSOCIATES, PC WITH JACK JARRETT AS LEAD COUNSEL,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

———————

2021-2021

———————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00129-PEC, Judge Patricia E. Campbell-Smith.

———————

REYNA, *Circuit Judge*, dissenting.

The United States Court of Federal Claims denied the government's motion to dismiss for failure to state a cause of action. It determined that Plaintiffs-Appellees sufficiently stated a claim for relief under the Back Pay Act and the Border Patrol Agent Pay Reform Act ("BPAPRA"). *Abrantes v. United States*, 151 Fed. Cl. 551, 552–53 (2020).

The majority reverses and remands, holding that the Anti-Deficiency Act renders null the relevant provisions of the BPAPRA and Back Pay Act when the failure to pay timely wages is a result of a government shutdown. Maj. Op. 7–9.  I disagree.

Briefly, the BPAPRA governs compensation for border patrol agents and outlines three "levels" of pay.  *See* 5 U.S.C. § 5550.  It provides that each "border patrol agent shall receive pay" corresponding to their assigned level and "shall receive compensatory time off or pay at the overtime hourly rate of pay for hours of work in excess of" the number of hours set for each level.  5 U.S.C. § 5550(b)(2)(B), (b)(2)(D), (b)(3)(B), (b)(3)(D), (b)(4)(B).  The Back Pay Act provides:

> An employee of an agency who . . . is found by appropriate authority under applicable law . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
>
> > (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
> >
> > > (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period.

5 U.S.C. § 5596(b)(1).

Plaintiffs-Appellees allege that they were required to work during a government shutdown and were not paid on

their scheduled pay day. They allege that failure to timely pay wages constitutes an unjustified and unwarranted personnel action under the Back Pay Act. Appellee's Br. 13–14.

The majority does not reach the question raised on appeal noting that "even if the BPAPRA together with the Back Pay Act generally require timely payment on regular pay dates, a lapse in appropriations is a circumstance that justifies later payment." Maj. Op. 8.

I disagree with my colleagues for the reasons I set out in my dissent in *Avalos v. United States*, No. 21-2008 (Fed. Cir. Nov. 30, 2022) which, for purposes of economy, I incorporate and submit in this appeal. *See infra.* I determine that the Plaintiffs-Appellees are not barred as a matter of law from pursuing their claim for relief under the Back Pay Act and the BPAPRA. As such, I would affirm the Court of Federal Claims' denial of the government's motion to dismiss for failure to state a cause of action. *Abrantes*, 151 Fed. Cl. at 552–53.

* * *

This appeal involves two statutes. The Fair Labor Standards Act ("FLSA") requires employers, including the U.S. government, to pay workers earned wages on a regularly scheduled pay period basis. Employers that fail to pay their workers on a timely scheduled basis are subject to certain penalties, including liquidated damages. The other statute, the Anti-Deficiency Act ("ADA"), applies to government officials. It prohibits government officials from making expenditures, where the expenditure is not funded by duly passed appropriations. In other words, the government lacks authority to spend money it does not have.

The majority interprets the relevant provisions of the ADA and FLSA to mean that the ADA renders null the liquated damages provision of the FLSA. I disagree. I

believe that each statute stands alone and that the relevant provisions of the two statutes are not inconsistent with each other.

From December 22, 2018, to January 25, 2019, the federal government partially shutdown due to lack of appropriations (funding). *Avalos v. United States*, 151 Fed. Cl. 380, 382 (2020); J.A. 274. To keep key parts of the government functioning, the government created two categories of federal employee: "excepted" and "non-excepted." Non-excepted employees were instructed to not show-up for work and received no compensation for the period of time they did not report for work. This appeal does not involve non-excepted employees.

The "excepted" employees were required to report for work during the shutdown, to continue working and to perform normal duties. Despite working and earning wages during the shutdown, the excepted employees were not paid for their work until the first payday after the shutdown ended. *Avalos*, 151 Fed. Cl. at 382–83. This means that excepted employees received no pay on their regularly scheduled paydays during the shutdown.

At the time of the shutdown, Plaintiffs-Appellees were employed as Customs and Border Protection Officers for the U.S. Department of Homeland Security. These officers ("CBP Officers") were designated as excepted employees and were required to report for work. *Id.* at 382. They received no pay during the shutdown but were paid on the first regularly scheduled payday that came after January 25, 2019, the day the shutdown ended. *Id.*; J.A. 280–83.

On January 29, 2019, the CBP Officers filed their amended complaint in the United States Court of Federal Claims ("Court of Claims") seeking liquidated damages for the time they worked without pay during the shutdown. J.A. 288. The CBP Officers alleged that, under the FLSA, the government was liable for liquidated damages because

during the shutdown it failed to pay wages on their regularly scheduled payday(s).

The government moved to dismiss the suit for failure to state a claim.  The government did not dispute that the CBP Officers were not timely paid during the shutdown.  The government asserted that the government shutdown was caused by a lack of general appropriation and, therefore, it was prohibited from paying the CBP Officers.  According to the government, it cannot, as a matter of law, be held liable for liquidated damages that are based on wages not paid during the shutdown because the ADA prohibited it from paying the wages for which there was no funding during a shutdown.  The Court of Claims denied the government's motion based largely on its decision in *Martin,* which involved issues identical to the issues in this case. *Avalos*, 151 Fed. Cl. at 387–91 (discussing *Martin v. United States,* 130 Fed. Cl. 578 (2017)).  The government appeals the judgment of the Court of Claims.

According to the majority, the "central question in this appeal is how the Anti-Deficiency Act's prohibition on government spending during a partial shutdown coexists with the FLSA's seemingly contradictory timely payment obligation." Maj. Op. 14.  The majority reverses and remands to the Court of Claims, holding that the government cannot, as a matter of law, be held liable for liquidated damages under the FLSA where the failure to pay employee wages was due to a government shutdown.  I disagree with my colleagues on several fronts.

First, the majority errs that as a matter of law, there is no FLSA violation in this case.  The law is well-settled on the question of whether federal employees are entitled to liquidated damages under the FLSA when they are not paid on their regular payday.  The FLSA makes clear that failure to pay wages on regularly scheduled paydays constitutes a FLSA violation.

The majority is also incorrect that liquidated damages cannot attach because the government was prohibited by the ADA, and presumably not of its own choosing, from paying the CBP Officers.

My sense is that the FLSA and ADA are distinct statutes with distinct purposes whose operations in this case neither intersect nor are otherwise inconsistent. Stated differently, the ADA in this instance does not trump the FLSA and render its liquidated damages provision null.

The FLSA provides in relevant part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates . . . not less than $7.25 an hour.

29 U.S.C. § 206(a)(1)(C). The FLSA is administered to federal employees by the Office of Personnel Management ("OPM"). OPM has promulgated a regulation providing that employees must be paid "wages at rates not less than the minimum wage . . . for all hours of work." 5 CFR § 551.301(a)(1). The FLSA provides that employers who violate these provisions "shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Again, the undisputed facts are that the government required the CBP Officers to report to work during the shutdown; and that the CBP Officers were not paid wages on their regularly scheduled paydays. These circumstances clearly apply to § 216(b) of the FLSA, and on this basis, I would find that the government's failure to pay the CBP Officers during the shutdown was a violation of the FLSA.

The majority appears to agree with the foregoing conclusion, but my colleagues take steps to avoid saying so. Namely, they engage in an unorthodox statutory interpretation that first examines whether the statutes are contradictory and whether the statutes can coexist. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (The statutory interpretation "inquiry begins with the statutory text, and ends there as well if the text is unambiguous."); *see also Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1321–22 (2020) (explaining that the ADA did not "qualify" the government's obligation to pay an amount created by the "plain terms" of a statute). In so doing, the majority concludes that the government is shielded from liquidated damages if the failure to pay is due to a shutdown. In other words, the statutes can be said to coexist because the FLSA is rendered nugatory.

There is no principled basis for the majority view. Indeed, the opposite is true. The FLSA is remedial in nature, and it acts as a shield to protect workers. Not so with the ADA. The ADA is meant to punish government officials for certain actions. The ADA neither references the FLSA nor the liquidated damages provision of § 216(b). Nothing in the statues, or applicable caselaw, supports an argument that the ADA applies to federal workers.

The Supreme Court has recognized that the FLSA was enacted "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) (citing H. Rep. No. 2738, 75th Cong., 3d Sess., pp. 1, 13, 21, and 28). The FLSA recognizes that employees do not have equal bargaining power and serves to protect them. *Id.*

Similarly, the Supreme Court has explained that the FLSA liquidated damages provision is not meant as punishment for the employer, but rather, focuses on

compensating the employee.  *Id.* at 707 ("[T]he liquidated damages provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.").

According to the Supreme Court, the ADA's requirements "apply to the official, but they do not affect the rights in this court of the citizen honestly contracting with the Government." *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 197 (2012) (citation omitted).

Here, the CBP Officers were honestly "contracting" with the government.  There is no legal support for the belief that government workers forfeit their FLSA protection at a time of shutdowns.  As the Supreme Court has noted, the insufficiency of an appropriation "does not pay the Government's debts, nor cancel its obligations." *Me. Cmty.*, 140 S. Ct. at 1321–22 (2020) (quoting *Ramah*, 567 U.S. at 197). This court has recognized, "the Supreme Court has rejected the notion that the Anti-Deficiency Act's requirements somehow defeat the obligations of the government." *Moda Health Plan, Inc. v. United States*, 892 F.3d 1311, 1322 (Fed. Cir. 2018) *rev'd on other grounds*, *Me. Cmty.*, 140 S. Ct. 1308.

The majority fails to point to legal authority for the proposition that the ADA cancels the government's obligation to protect the very federal employees that the FLSA was intended by Congress to protect.  I see no congressional requirement or Supreme Court precedent that negates liquidated damages under the FLSA or the ADA.  Rather, the liquated damages provision of the FLSA "constitutes a Congressional recognition that failure to pay the statutory minimum *on time* may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay." *Brooklyn Sav.*, 324 U.S. at 707

(emphasis added) (citation omitted).  And as this court has explained, the "usual rule" is "that a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid." *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988).

Other regional circuits have concluded that a FLSA claim accrues when an employer fails to pay employees on their regular payday, and that the FLSA violation occurs on that date.  *See Atl. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944) ("[I]f an employer on any regular payment date fails to pay the full amount . . . due an employee, there immediately arises an obligation upon the employer to pay the employee . . . liquidated damages."); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir. 1944) ("[O]vertime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day . . . .  [T]he failure to pay it, when due, [is] a violation of [the FLSA]."); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993) ("The only logical point that wages become 'unpaid' is when they are not paid at the time work has been done, the minimum wage is due, and wages are ordinarily paid—on payday."); *Olsen v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985), *modified*, 776 F.2d 265 (11th Cir. 1985) ("The employee must *actually receive* the minimum wage each pay period.").

The majority asserts a number of other conclusions: that the ADA trumps the FLSA because it was passed first and is more specific than the FLSA; that requiring liquidated damages in this situation would lead to an "absurd result"; and that the government would be forced to "choose between a violation of the Anti-Deficiency Act or the FLSA." Maj. Op. 18–19.  But we need not reach these questions because there is no justiciable conflict between the two laws.  *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) ("Respect for Congress as drafter counsels against too easily finding irreconcilable conflicts in its work . . . .  Allowing judges to pick and choose between

statutes risks transforming them from expounders of what the law *is* into policymakers choosing what the law *should be*.").  I do agree with the majority that "where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  Maj. Op. 19 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984)).

Payday is important to the everyday worker.  Missing a paycheck can have devasting consequences.  That is what this case is about.  Congress sought a remedy for such consequences by extending the potential for liquidated damages.  Here, the employer should not be absolved of adherence to the FLSA, more so where the employer is the government that brought on the shutdown.

The Court of Claims correctly analyzed the statute and binding Supreme Court precedent.  I would affirm the Court of Claims' decision and allow the case to continue.