NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KENNETH L. BUHOLTZ,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1009

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00408-AOB, Judge Armando O. Bonilla.

---

Decided: November 1, 2024

---

KENNETH L. BUHOLTZ, Seagoville, TX, pro se.

DELISA SANCHEZ, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY.

---

Before MOORE, *Chief Judge*, STOLL and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Plaintiff-Appellant Kenneth L. Buholtz appeals two decisions of the United States Court of Federal Claims that (1) dismissed sua sponte Counts I, II, and IV of his Fifth Amended Complaint for lack of subject matter jurisdiction, *Buholtz v. United States*, No. 16-408, 2023 WL 2054073, at \*10 (Fed. Cl. Feb. 16, 2023), and (2) dismissed or granted judgment on the record in favor of Defendant-Appellee United States ("the Government") with respect to the remaining Counts III and V–XI of Mr. Buholtz's Fifth Amended Complaint, *Buholtz v. United States*, 167 Fed. Cl. 107, 110 (2023). Mr. Buholtz challenges both decisions.[1] For the reasons set forth below, we affirm.

### BACKGROUND

Mr. Buholtz is a former active-duty Army aviation officer who obtained the rank of Lieutenant Colonel, but ultimately retired as a Major because of his criminal conduct.

In March 2015, Mr. Buholtz, proceeding pro se, filed suit in the United States District Court for the District of Columbia, requesting money damages exceeding $11 million. In January 2016, the district court transferred this case to the United States Court of Federal Claims because it appeared that Mr. Buholtz's claims arose under the Tucker Act. SAppx44.[2]

In March 2016, Mr. Buholtz filed his First and Second Amended Complaints in the Court of Federal Claims,

---

[1] Mr. Buholtz separately filed a Motion for Sanctions. *See* ECF No. 55. We have reviewed and considered the motion for sanctions, and we deny the motion.

[2] "SAppx" refers to the Supplemental Appendix that the Government filed with its informal brief.

followed by a Third Amended Complaint in May 2016. SAppx2–3. In June 2016, the Court of Federal Claims requested Mr. Buholtz's consent for referral to the Court of Federal Claims Bar Association Pro Bono/Attorney Referral Pilot Program and Mr. Buholtz secured counsel in January 2017. SAppx3–4. Then, in April 2017, Mr. Buholtz, with the assistance of counsel, filed his Fourth Amended Complaint. *Id.*

In August 2019, Mr. Buholtz filed a Fifth Amended Complaint with 11 Counts. *See* SAppx133–73. In Count I, Mr. Buholtz seeks $2,800,000.00 in damages for alleged delays by the Government in processing his Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests. SAppx144–45. In Count II, Mr. Buholtz seeks damages, also in the amount of $2,800,000.00, for what he describes as "excessive process delays" with respect to the amount of time that the Army Board for Correction of Military Records ("ABCMR") spent addressing his various applications. SAppx146–47. Mr. Buholtz contends in Count III that his April 2004 Army reassignment from the Republic of Colombia was in retaliation for his whistleblowing activities and, as result, he lost Aviation Career Incentive Pay ("ACIP") under 37 U.S.C. § 204. SAppx148–49. In Count IV, Mr. Buholtz seeks compensation for alleged retaliation against him by the Army for his alleged whistleblowing activities stemming from his service in the Republic of Colombia. SAppx150–52. In Count V, Mr. Buholtz asserts that he was deprived of a reimbursement in the amount of $35,000.00 for security upgrades to, and $220,000.00 in forgone rent from, a home that he purchased in Melgar, Colombia because Mr. Buholtz "'blew the whistle' on numerous issues." SAppx153–54. In Count VI, Mr. Buholtz contends that the Army issued him a "feint praise" officer evaluation report ("OER") in retaliation because "he blew the whistle on military supply discipline problems, and the wrongful death of two innocent civilians, while on a Special

Operations assignment in Colombia." SAppx155–56. In Count VII, Mr. Buholtz alleges that the Army refused to place his records before a special selection board for promotion consideration to the rank of Colonel in retaliation for "his 2004 whistleblowing in Colombia." SAppx157–58. In Count VIII, Mr. Buholtz challenges the Army's denial of his request for a waiver regarding the recoupment of approximately $150,000.00 in voluntary separation incentive ("VSI") payments made following Mr. Buholtz's 1992 voluntary separation due to his post-October 2011 collection of military retirement pay. SAppx159–60. In Count IX, Mr. Buholtz alleges that senior officers in his chain of command "artificially insert[ed] themselves" into his OER for the period of April 9, 2010, through February 1, 2011 "for the sole purpose of retaliation." SAppx161–62. In Count X, Mr. Buholtz asserts that he was denied accrued leave and that his time-in-service ("TIS") was not correctly calculated at the time of his separation. SAppx163–65. Finally, in Count XI, Mr. Buholtz contends that he was wrongly separated at the reduced grade of Major and is, instead, entitled to a disability retirement at the rank of Lieutenant Colonel or Colonel under 10 U.S.C. § 1201. SAppx166–69.

In February 2023, the Court of Federal Claims dismissed sua sponte, for lack of jurisdiction, Counts I (FOIA and Privacy Act), II (Timeliness of ABCMR Decisions), and IV (Military Whistleblower Protection Act (MWPA)) of the Fifth Amended Complaint.

In August 2023, the Court of Federal Claims granted the Government's motion to dismiss the alleged whistleblowing claims that Mr. Buholtz advanced in Counts III, V, VI, and VII, of his Fifth Amended Complaint for lack of jurisdiction, Count VIII (VSI Repayment Waiver) as nonjusticiable, Count IX (Referred OER) for lack of jurisdiction or failure to assert a viable claim for relief, and granted judgment on the administrative record for the Government with respect to Count X (Accrued

Leave and TIS) and Count XI (Medical Retirement and Grade Reduction).

Mr. Buholtz timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Mr. Buholtz filed a Form 12 Informal Opening Brief and a lengthy brief in support of his Form 12 Informal Opening Brief. SAppx174–211. We reviewed both filings. In both filings, however, Mr. Buholtz fails to explain or establish, any specific factual or legal errors by the Court of Federal Claims in the two opinions that it issued with respect to Mr. Buholtz's Fifth Amended Complaint. Instead, in his brief, *see* SAppx174–211, Mr. Buholtz restates the claims that he advanced in his Fifth Amended Complaint, *see* SAppx133–73, and reiterates his grievances based on those claims.[3]

We see no error in the decision of the Court of Federal Claims in this case. As the trial court correctly observed: (1) Counts I–VII, IX, and XI do not fall within the Court of Federal Claims' limited jurisdiction; (2) Count VIII is nonjusticiable; and (3) on Count X, the Government is entitled to judgment on the administrative record. We address each in turn.

### I

The Tucker Act establishes and limits the jurisdiction of the Court of Federal Claims. *See* 28 U.S.C. § 1491. The

---

[3]    On appeal, Mr. Buholtz also asserts that the Court of Federal Claims failed to decide Count XII—a Count that Mr. Buholtz alleges the Court of Federal Claims created sua sponte. There is no merit to this assertion. The Court of Federal Claims did not create a Count XII sua sponte, and thus did not fail to decide Count XII.

Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon [the Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Thus, "a plaintiff must identify a separate source of substantive law that creates the right to money damages," that is the "source must be 'money-mandating.'" *Fisher v United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). We "review[] a grant or denial of a motion to dismiss for lack of subject matter jurisdiction de novo." *Creative Compounds, LLC v. Starmark Lab.*, 651 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009)).

In its first decision, the Court of Federal Claims determined that Counts I (FOIA and Privacy Act responsiveness), Count II (ABCMR timeliness), and Count IV (MWPA claims) fell outside of its limited jurisdiction. In its second decision, the Court of Federal Claims determined that Counts III, V–VII, IX, and XI also fell outside of its limited jurisdiction because these Counts "relate to or otherwise stem from and are inextricably intertwined with Mr. Buholtz's alleged whistleblowing activities while serving in Bogotá, Columbia." SAppx47; *see* SAppx47–53. As explained below, we agree with the Court of Federal Claims' determinations.

A

In Count I, Mr. Buholtz alleges the Government failed to timely respond to his 25 requests for information and documents submitted under the FOIA Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. In support, Mr. Buholtz cites a portion of 5 U.S.C. § 552a(g)(4) (civil remedies), which provides:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which

> the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of–
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4).  But, as the Court of Federal Claims correctly noted, the statute that Mr. Buholtz cites expressly vests jurisdiction over such claims in the United States district courts.  *See id.* § 552a(g)(1) ("[T]he individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.").  As such, we agree that the Court of Federal Claims lacks jurisdiction over Count I, and thus affirm the trial court's decision to dismiss Count I.

## B

In Count II, Mr. Buholtz asserts the ABCMR failed to timely adjudicate his 21 applications for administrative relief in accordance with 10 U.S.C. § 1557.  Section 1557(b) provides:

> Clearance deadline for all applications.– Final action by a Corrections Board on all applications received by the Corrections Board (other than those applications considered suitable for administrative correction) shall be completed within 18 months of receipt.

10 U.S.C. § 1557(b).  However, the statute provides for a discretionary Secretarial (nondelegable) waiver of this deadline and notes that the "[f]ailure of a Corrections

Board to meet the applicable timeliness standard . . . does not confer any presumption or advantage with respect to consideration by the board of any application." *See id.* § 1557(c)–(d). In fact, the statute specifies that the consequence of an alleged untimely adjudication by the ABCMR is inclusion of the matter in an annual report to Congress by the Army Secretary—not mandated monetary damages to an individual applicant. *See* 10 U.S.C. § 1557(e). As such, the statute is not money-mandating, and therefore this claim falls outside the jurisdiction of the Court of Federal Claims. *See Moden v. United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005); *Collins v. United States*, 67 F.3d 284, 286 (Fed. Cir. 1995). Accordingly, the Court of Federal Claims correctly dismissed Count II.

## C

Counts III–VII, IX, and XI relate to or otherwise stem from and are inextricably intertwined with Mr. Buholtz's alleged whistleblowing activities while serving in Bogotá, Columbia. For example, in Count III, Mr. Buholtz alleges the United States Military Group ("USMILGRP") in Bogotá orchestrated his April 2004 reassignment stateside in retaliation for his whistleblowing, resulting in his loss of ACIP. In Count IV, Mr. Buholtz seeks relief under the MWPA, 10 U.S.C. § 1034, alleging, inter alia, that "Buholtz had done his Colombia based 'whistleblowing' through the Government Accountability Office ["GAO"]" yet "[h]is [Inspector General] chain had repeatedly averred that GAO was not a 'protected source[.]'" SAppx150. In Count V, Mr. Buholtz asserts officials improperly denied his residential security upgrade reimbursements "after Buholtz 'blew the whistle' on numerous issues," and thereafter, blacklisted the rental of his Columbian home (by other servicemembers) following Mr. Buholtz's reassignment stateside. SAppx154. Mr. Buholtz again invokes the MWPA in Count VI and contends his chain of command included "feint praise" in his OER because he "blew the whistle" on military supply discipline problems

and the wrongful deaths of two innocent civilians. SAppx155. In Count VII, Mr. Buholtz also invokes the MWPA and alleges the Army took steps to ensure his military personnel record was not competitive to merit selection for promotion to Colonel because of his "2004 whistleblowing in Columbia." SAppx157. In Count IX, again relying on the MWPA, Mr. Buholtz raises retaliation as the primary issue, and notes his "tiff with [Major] Day, combined with his criminal issues, afforded [Colonel] Battaglia the perfect opportunity to compound the whistleblower activities already dogging him." SAppx161–62. Lastly, in Count XI, Mr. Buholtz alleges the contested personnel actions were undertaken by the Army in a continuing effort to further punish him for his alleged whistleblowing activities. *See* SAppx169 ("The Army Board reveled in the opportunity to exact revenge for years of Whistleblowing complaint processing.").

Because Mr. Buholtz is currently proceeding pro se, we construe his pleading liberally. *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) ("[P]ro se pleadings are to be liberally construed." (citation omitted)). Still, pro se plaintiffs must establish the Court of Federal Claims' jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002). While Mr. Buholtz generally cites the Tucker Act, 28 U.S.C. § 1491, and the Military Pay Act, 37 U.S.C. § 204, in support of his claims, each of these Counts (III, V–VII, IX, and XI) fits squarely within the ambit of the MWPA. Yet the MWPA is not money-mandating, so the Court of Federal Claims lacks jurisdiction to adjudicate such claims. In fact, in his complaint, Mr. Buholtz acknowledges that the statute is not money-mandating. *See* SAppx149. Therefore, we affirm the Court of Federal Claims' determination that it lacks jurisdiction to adjudicate Counts III–VII, IX, and XI.

II

A motion to dismiss pursuant to the Court of Federal Claims Rule ("RCFC") 12(b)(6) for failure to state a claim upon which relief may be granted is appropriate when the plaintiff alleges facts that do not entitle him or her to a remedy. *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003). "We review decisions to dismiss complaints under Rule 12(b)(6) de novo." *Zafer Construction Co. v. United States*, 40 F.4th 1365, 1367 (Fed. Cir. 2022).

In Count VIII, Mr. Buholtz claims entitlement to a waiver and refund of the VSI repayments under 10 U.S.C. § 1175a(j)(5). The Court of Federal Claims determined that "Count VIII must be dismissed as nonjusticiable under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted" because "the Secretary is statutorily entrusted with the administration of [the VSI Waiver] program" and "[a]s such, the exercise of such authority is not judicially reviewable." SAppx49. We agree.

The VSI waiver provision provides: "The Secretary of Defense may waive, in whole or in part, repayment required under paragraph (1) if the Secretary determines that recovery would be against equity and good conscience or would be contrary to the best interests of the United States." 10 U.S.C. § 1175a(j)(5). Here, because § 1175a(j)(5) waivers are wholly within the discretion of the Secretary, the Court of Federal Claims and this court lack the ability to review the Secretary's decision and provide relief. *See, e.g.*, *Voge v. United States*, 844 F.2d 776, 779–81 (Fed. Cir. 1988) (holding that a court may not review the substantive merits as to the denial of military Additional Special Pay under 37 U.S.C. § 302 because the military was ultimately responsible for making the determination on whether to terminate Additional Special Pay, and thus the controversy is nonjusticiable). Moreover, the Defense Secretary has not adopted a formal regulatory or policy

scheme governing the substantive assessment of VSI waiver requests. Thus, we affirm the Court of Federal Claims' decision to dismiss Count VIII as nonjusticiable under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

## III

"We review a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record without deference." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). Thus, "we apply the same standard of review as the trial court," and should only overturn the ABCMR's decision if it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.* And we review the trial court's findings of fact for clear error. *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (citing *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). This standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157.

In Count X, Mr. Buholtz alleges (1) the Army miscalculated Mr. Buholtz's TIS at the time of his separation and (2) erred by denying payment for 72 leave days. First, with respect to the alleged miscalculation of Mr. Buholtz's TIS, the 4-month and 16-day difference between the Army's and Mr. Buholtz's calculations is attributable to uncredited "bad time" that Mr. Buholtz accumulated while in federal prison until his separation from the Army (i.e., June 14, 2011, to October 31, 2011). SAppx123–24. Mr. Buholtz claims he should have been permitted to offset these 139 days of "bad time" with accrued leave rather than forfeit the leave because of his

"civilian confinement" status.   *See* SAppx163–64.   The ABCMR properly denied Mr. Buholtz's claim.

By statute, "[a] member of the Army . . . who is absent without leave . . . forfeits all pay and allowances for the period of that absence, unless it is excused as unavoidable." 37 U.S.C. § 503(a).   Here, Mr. Buholtz was detained and ultimately incarcerated in a federal prison after pleading guilty to a criminal offense.   As such, Mr. Buholtz was not entitled to military pay or the accrual of annual leave or benefits from June 14, 2011 (i.e., his first full day in pretrial detention following his arrest and arraignment on a federal charge) and continuing through his military separation on October 31, 2011.   *See Harris v. United States*, 868 F.3d 1376, 1380 (Fed. Cir. 2017) (holding that military member was not entitled to pay for his pre-trial confinement because he was ultimately convicted).

With respect to Mr. Buholtz's claim that he was incorrectly denied payment for his accrued leave, Mr. Buholtz cashed out the maximum 60 days of accrued leave in his military career and, thus, by regulation is entitled to nothing more.   *See* SAppx131–32.   Indeed, Mr. Buholtz admits that he cashed 30 days of accrued leave when he first separated from the Army in 1978.   SAppx131. And an additional 30 days was cashed out on Mr. Buholtz's behalf during his period of civilian confinement from June to July 2011.   SAppx131–32.   As such, with respect to Count X, we will not disturb the decision of the ABCMR because it is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### CONCLUSION

We have considered Mr. Buholtz remaining arguments and do not find them persuasive.   For the reasons above, we affirm the judgments of the Court of Federal Claims.

**AFFIRMED**

BUHOLTZ v. US                                                    13

COSTS

No costs.